Good morning, Judge Riley, Judge Beam, Judge Shepard, Mr. Holt. May it please the Court. The community of Benkelman, NE, a town of less than 900 people, in fact, spent millions of dollars of scarce community resources to construct a water treatment plant in their community that ultimately failed. In an effort to hold the two parties responsible for the design and the construction of this water treatment plant, Baseline Engineering and another company called Lane-Christensen Company, the community filed a civil action in the District of Nebraska. However, in the very beginning stages of the litigation, the District Court granted Baseline Engineering's motion to dismiss, finding it lacked subject matter jurisdiction under Rule 12b-1. In doing so, Your Honors, the District Court decided to apply one agreement, we'll call the Baseline Agreement, which contained an arbitration clause, over another agreement between the parties we'll call the EJCDC Agreement, which was approved by the Engineer Joint Contract Document Commission, which did not mandate arbitration in this matter. As raised in our brief, Your Honors,  but if I may, I'd like to begin with a resolution that does not necessarily require this court to resolve more complicated procedural and standard of review issues that are at stake here. Instead, it requires this court to apply a very basic rule of contract construction, and that is to apply unambiguous terms of an agreement as written. This court held in the Nebraska Public Power case, I believe, Judge Beam, you were the author of that opinion, this court held that neither the court nor the parties may pick and choose which unambiguous terms of an agreement to apply. Baseline does not dispute this proposition, and it's a proposition that the District Court seemingly attempted to apply. Here, there is an undisputed clause that exists in these agreements, even if the District Court correctly construed the Baseline Agreement and the EJCDC Agreement together as one, even if that was correct, which of course we argue it is not, but there is a provision in the EJCDC Agreement that Baseline agreed to, and that's paragraph 6.01k of that agreement, which can be found on page 206 of the Joint Appendix, Your Honors. In that provision, both parties agreed that all contract documents shall be subject to agency concurrence. There is no clause in the Baseline Agreement that conflicts with 6.01k. It is undisputed that the only agreement that was submitted to the USDA for review and concurrence was the EJCDC Agreement. It's also undisputed that Baseline Engineering signed the EJCDC Agreement, agreeing to its terms and conditions. It signed it on August 27, 2009. Because that clause is undisputed, it is unambiguous, this Court is required to construe that clause as the parties intended. What does that clause require? Your Honor, that clause on its face, in the plain meaning, is it requires agency concurrence before the contract can be enforced. Who's the agency? The agency, Your Honor, is the USDA Department of Rural Development. They are the federal agency that's in charge of implementing water and wastewater loans for rural community projects like this water treatment plant in Binkleman. Now, is that dispute resolution provision in there, it does have an arbitration provision, but it doesn't, your argument, it doesn't cover this dispute. Was that the only one submitted to the government for its concurrence? Yes, Your Honor, that is undisputed. Baseline Engineering never submitted the Baseline Agreement to the USDA for concurrence. The only agreement was the EJCDC Agreement. How big a dog does the agency have in this fight? Well, a big one, Your Honor, because pursuant to the contract term, 601K in particular, if the agency doesn't concur in the contract, it can't be enforced. Both parties agreed that all contracts shall be submitted to the USDA in that provision. Well, you know, it really doesn't say. It just says the sentence ends with concurrence. You're adding some additional language about before it can be enforced or before it's effective. It just says shall be subject to agency concurrence. Are you sure that that's what would be the effect of that provision? I am, Your Honor, because if you look at the very definition of the term subject to, that means that something has to be done first before it's effective. So the very meaning of the term subject to is that it requires that the agency do something before the parties agree that this is the final operative agreement. At a bare minimum, does the involvement of a federal agency should it have required Judge Kupf to have applied the Federal Arbitration Act? Well, Your Honor, Baseline argues that they never intended to file a motion to compel arbitration under the FAA. There is case law that we reference in our brief, in particular from the Seventh Circuit, the Falkenberg case, for example, or the Auto Mechanics v. Vancard case, which indicate here that the Federal Arbitration Act doesn't apply because the very question as to whether the parties agreed to a contract is at issue. So in other words, the FAA and the arbitration standards and the presumptions that Baseline spends a lot of time on, from M.S. Bremen, for example, don't kick in unless and until the dispute as to whether a valid agreement exists is resolved. And in that case, the Court said that is a question dependent on state contract principles. Well, the arbitration procedure that you have involved yourselves with here is a state arbitration act. And is it similar to the Federal Arbitration Act in terms of requiring arbitration if there's even a hint of the need for arbitration and so forth, or what? Well, Your Honor, the provision you're talking about is one that exists in the Baseline agreement that requires the Colorado Rules of Arbitration to apply. However, our position is that agreement has been supplanted. Those provisions don't apply in this situation because the operative agreement is the EJCDC agreement.  It lays out that arbitration is only mandated in matters involving less than $200,000. Baseline doesn't dispute that this matter exceeds $200,000. Let me ask you this. If the second agreement, I'll call the second one, why did the change orders reference just the first contract? I think, Your Honor, that there's a couple of issues there. First, I think there is at a minimum an issue of fact as to what the change orders affected. If you look at the face of the change orders that Baseline attached to their reply brief in the district court, it simply references a standard form of agreement, while the EJCDC agreement, or the second agreement, Your Honor, is also entitled standard form of agreement. So I think there's, again, at a minimum a disputed issue as to what, in fact, did that change. Now, to the extent there's a reference to the Baseline agreement, Baseline says that the USDA concurred in those change orders. Again, I think that there's an issue of fact as to what did the USDA believe it was concurring in. The only agreement that had been submitted to it was the second agreement, or the EJCDC agreement, not the Baseline agreement. I have a concern that the district court decided this under 12B1 and they can't do that. And the Supreme Court has already said 12B3, you can't do this. And either, who knows what the Supreme Court says applies or whether it's 12B6 or Rule 12 or what, but there's some pretty good indication it can't be decided under 12B1. What's your position on that? That's absolutely correct, Your Honor. 12B1 is, of course, a jurisdictional rule. And there is plenty of authority that we've cited in our brief. In fact, the majority rule adopted by the Second Circuit, the Fifth Circuit, the Seventh Circuit, the Ninth Circuit, the Eleventh Circuit, is that this is not a jurisdictional question. Before Atlantic Marine in 2013, most of the courts around the country said this was a venue issue. Arbitration and form selection clauses really are a venue issue. Atlantic Marine came in and said, well, 12B3 isn't appropriate. It's really more of a form nonconvenience. But if we can back up, I think it's very clear that 12B1 is not the appropriate rule. And the Minnesota supply case from the District of Minnesota, in this case, explained why. And that's because the parties, by way of contract, cannot divest the court of its jurisdiction. That jurisdiction exists independent of anything the parties do. That jurisdiction is constitutional and exists by virtue of statute. If we tell the district judge that he can direct arbitration, but he must stay the action rather than dismiss it, would that cure the 12B1 problem? It wouldn't, Your Honor. Well, there's a couple of problems with that. First off, even if the court's applying 12B1, it's still applying the wrong standard of review here. It didn't give deference to the nonmoving party concerning disputed issues of fact. And I mention that, Judge, because there's authority, and I do want to reserve a little bit of time for rebuttal, but I'd like to finish answering your question. There is authority that we've cited to that makes very clear that to the extent there's disputed issues of fact, that decision has to be made by the fact finder. In fact, case law cited by Baseline, the John Morrell case, for example, or the United Mine Workers case, Baseline uses those cases for the proposition that this court is to review factual findings for clear error. Not only is that incorrect because that clear error standard derives out of Rule 52A, which occurs when there's a bench trial or an evidentiary hearing, something that did not happen here. This issue was decided at the very earliest stages on the briefs. But those cases also say, and I'll quote, that if we decide that the language is ambiguous, then resolution of that ambiguity is a question of fact to be determined by the jury. So in response to your question, I don't know as if the district court can just stay and order this case to arbitration. I think Baseline has acknowledged that there are disputed issues of fact here. In fact, on page 39 and 40 of their response brief, they specifically state that the contract is ambiguous because there are conflicting terms. On page 40, they say, thus, the contract is ambiguous and the meaning of the contract is a question of fact. Well, if that isn't the case, then this circuit's authority may clear that that issue has to be decided by the jury. Has a jury been demanded in this case? Yes, Your Honor. And if I may reserve the rest of my time for rebuttal. Yes, you may. Thank you, Judge. Okay, Mr. Holt. Good morning. Good morning, Your Honors. May it please the court, thank you very much for the opportunity to appear in front of you this morning. I appreciate the time. I would first like to talk about the agreement. The trial court judge found, we believe correctly, that the agreement consists of the July 2009 contract and its two attachments, which are clearly referenced in there as Exhibits A and B. A is the property description, which is a site map which shows where the project is to be located, and B is the Joint Engineering Council agreement that's been referred to earlier in the argument today. Those are the attachments? Those are the attachments to the document, Your Honor. And they are referenced as such and identified as such in the base agreement. What about the attachment or the part of the contract that says that you'll arbitrate under $200,000, for instance, but not if the issues are more? That you're ignoring that? I'm not ignoring it, Your Honor, because it is in Exhibit B. Exhibit B to the document consists of the engineering contract, which has the $200,000 arbitration provision in it. The agreement itself, which is the so-called July 2009 contract, which was identified as such. Why do we consider attachments but not exhibits to the contract? Well, Your Honor, the contract itself consists of the agreement and then what they call Exhibits A and B. That's what they denoted them and integrated them into one document. And then Exhibit B itself has some subparts in it as well that are also referred to as attachments or exhibits to that Exhibit B. And the trial court, as the court is aware, found that the contract consists of those three parts as well as an integration clause and a primacy clause, which basically said to the extent there's any inconsistency between the base contract and the two attachments to it, that the base contract would govern and take precedence. But the other contract says that it supersedes all others. And I'd like you to address that, but also in the context that, and I'm going to call them the first contract, second contract, because I can't stick with all these acronyms. The second signed document, is that complete in and of itself? In other words, could your client have functioned, both clients have functioned on that alone? I don't believe so, Your Honor. Why not? I believe that if you look at the document, the document really contemplates the following course of action. That there is a planning for the project, and I believe the fee is $20,000 and is set forth on the first page of the agreement. And once that planning is done, that planning includes doing certain preliminary feasibility studies and financial planning necessary to do a concept that then would submit that concept to USDA for funding. And as a part of that funding process, then they submit Exhibit B because USDA requires that for the funding process. But USDA did not get involved in this until after the contract was signed. USDA is not a party to the agreement. USDA did sign Exhibit B. Yeah, I understand that. My point is, if there was never a July contract, could the parties have functioned and done everything here under the August-October contract? And my answer to that is no, because the initial planning was done under the agreement, and then the planning for submission of contract documents, drawing specifications and detailed materials, as referred to in Exhibit B, comes later, and that's the reason why USDA didn't get involved until October, whereas the engineers started work in July. The engineer was working under the contract before the USDA received the document. Why was there a second document signed if it was merely an attachment to the first? Because it's a part of the USDA requirements for submission for funding, but it's not a part of the basic agreement that got my client going to do the planning for the city to submit the funding. So really it didn't matter, except for the USDA approval requirement, it didn't matter whether the EJDC document was ever signed? It didn't. It was frequently in construction documents, and the court may be aware of this, the AIA forms frequently have a signed contract on the face of it, and then they have the so-called general conditions, the A201, which is never signed. The EJCDC document is really the technical engineering requirements, but the planning started. USDA also, Your Honor, signed the change orders. USDA, in signing the change orders, acknowledged the existence of the original agreement and the composition of the three documents together. The USDA is not a party to the agreements, but Binkleman and the city agreed on what their deal was. Why do you think that was an acknowledgment of the other three together? Why do I believe that, Your Honor? Yeah, what do you base that on? Because if you look on the face of the change order, there's a grid, there's a box, and right under it it references the July 2009 agreement as the agreement to which the change order is made. So we're change ordering to the base contract. We're modifying the contract. And they did it three times, and they always referenced the original agreement in the change order. But I thought there was a June 20. Where does the June 20 date come? Well, I think it's July 20. Was it July? Okay. I thought it was. Okay. You said July 3 or something. Well, the July 2009 contract, as the trial court judge found, consists of the document that Binkleman signed on the 20th and Baseline signed on the 21st according to the dates on the document. But the trial court found that when you looked at the documents that you really could not discern when the parties signed each of the agreements, but they all constitute one and complete agreement. And so finding the dates of the individual execution of the attachments was not dispositive of when the contract started. But they would pony up the taxpayer's money in any event. Is that the idea? Well, I don't think that that is, Judge. I think that the way this worked, if you looked at the contracts, is the city engaged in a contract with the engineer to do planning, and there was a fixed fee for the planning of about $20,000, which appears on the face of the contract. And that planning is to do feasibility and to assist the city in doing the submissions necessary to see if they can get USDA funding. Because the contract provides that there is no guarantee that there would be USDA funding. The USDA regulations, which we've cited in our brief, provide that whether or not there's funding does not affect the obligation of the city to Baseline or Baseline's obligation to the city. So the notion that the USDA is a party to this agreement and their approval is necessary for this agreement to be enforceable is contrary to the USDA regulations. The USDA is interested in evaluating funding. Well, I don't think they're saying they're a party. I think they're saying that it was a condition preceding the Subject 2 language. Nothing was going to go forward until you had a concurrence from the USDA. And I don't agree with that, Your Honor. I think that the planning, and this is not unusual, engineers and other consultants are hired by parties to plan and assist them in determining the feasibility of whether they can submit for government funding for various projects and to comply with the government's requirements to see if the funding will, in fact, be approved by government. Let me put it this way. Yes, sir. If the government, the USDA, had not concurred in it, would the plan have been able to go forward? I'm sorry, would the plan have been... Would they have been able to go forward with this plan without the concurrence of the government? If the USDA had not funded the construction, I don't believe the construction would have taken place, but I believe that the city of Binkelman would still have had an agreement with Baseline to pay them for the engineering services that were provided at the beginning of the project to do the planning and the evaluation. That's all you're after, that much? Is that what you're saying? I'm sorry, sir. That's all you want to be paid in the final analysis here is for the planning, is that right? No, Your Honor. The project did move forward, and USDA did fund it. It would be pretty unrealistic to believe that the village of Binkelman, Nebraska, could have done this without the USDA's money, right? Well, I don't believe that the project would have been feasible without the USDA money, but the city of Binkelman hired the engineer to do the planning and submit an application necessary to qualify to see if they could get the funding, and that's an engineering service, and that engineering service is contemplated by the contract itself, and in the event that the funding was available, then the project would move forward, and so that's the reason why the contract has several different components, all of which are integrated into one agreement. It was not necessary, and there's no provision in the contract that sets forth that there aren't any subsequent execution of signatures. It's not a phased contract. There's no additional agreements necessary, and once the project started, the construction had some additional services, and over the next two years, that's what gave rise to the change orders that are before the court, and when the change orders were executed, it's very clear that they were executing the change orders back to the original agreement that was signed in July of 2009, and that was pertinent to the court. Who drafted those change orders? Was that baseline or the city or whom? Sir, I'm sorry. Who drafted the change orders? In other words, who wrote the contract date that they were referring to on there? Was that baseline or was it the city? Your Honor, I'm not sure under the contract, under the record, who actually initiated those forms because it's a form contract, but I do know that they're signed by both the city, the engineer, and acknowledged by the USDA, so all three parties signed them, but there's nothing in the record that would allow me to answer the question as to who initiated them. Let me ask you this. Let's get to the procedural issue of where we are on this, whether this can be done under 12b-1 or something else. Yes, sir. What's your position on that? Well, as I believe the court is aware,  under 12b-1. At least one other circuit has allowed it to proceed where you have an arbitration clause and, of course, a forum selection clause, which is the unique situation here where we have an arbitration clause and we have a forum selection clause which would require that the court abstain from jurisdiction because it would be required to send the case to another jurisdiction outside of the court's authority. There is several courts, several circuits that have decided that 12b-1 would allow you to do this and another that would allow 12b-3. This court, of course, has not addressed this particular issue. The Supreme Court has thrown out the 12b-3 issue, the Atlantic Marine case, but let's say 12b-1 is not the proper procedure. What would it be? Would it be under Rule 56, summary judgment, or would it be 12d? I don't think it would be Rule 56, Your Honor, because there's case law that if you submit a motion for summary judgment in a circumstance in which there's an arbitration clause, the party could be deemed to have waived the arbitration clause. And so in this particular case, since we felt we had a valid arbitration clause, we filed a motion under Rule 12b, and since this circuit had not determined whether 12b-1 or 12b-3 was appropriate, we felt comfortable that it was either a venue issue or a jurisdiction issue because under the Supreme Court authority on arbitration clauses, the court should favor arbitration clauses, and we had an arbitration clause here and we were trying to get it enforced. So I don't believe that Rule 56 is the right approach to it for that reason, Judge. What about Rule 12d? You know, I don't know whether 12d would apply or not. 12b-6? Well, you could file it under 12b-6, but then, Your Honor, you'd have to file an answer, I believe, in a certain affirmative defense of the arbitration clause. I guess you could file a motion and ask the court to grant you discretion to have it raised under 12b-6 without filing an affirmative defense, but typically affirmative defense would be necessary to raise it as an answer in that context. But I think that the two points that I would like to make with the court is that there is an arbitration clause here and we believe that the trial court judge painstakingly evaluated the facts and the law and concluded that the contract is ambiguous. And I believe that if you look at the contract that the parties put together in July of 2009 with exhibits A and B to them, and A is essential because it tells you where the project is, it's the site plan. B is the engineering attachment. Did the district court, though, make some fact findings on disputed issues? It made fact finding on issues necessary for it to resolve the question of the arbitration applicability and to consider the forum selection provision, and I believe that that is allowed under Rule 12b. And that has been allowed in other circuits. This circuit has not yet addressed that issue. The Falkenberg case, which was cited by my colleague before, of course, had those kinds of factual considerations determined before there was dismissal under Rule 12b. Is it relevant which party drafted the standard forum agreement and exhibit B? I don't believe it is under this circumstance, Your Honor, because if you look at the document, it says that neither party will be considered the drafter. The document has a provision that neither party shall be considered the drafter for interpretation purposes. We believe here that the decision that the contract was ambiguous is a question of law, which is subject to de novo review by the court. We believe that the fact determination is necessary to evaluate the contract to conclude factually that it was ambiguous is a question of fact and that that's subject to a clearly erroneous standard as applicable in this particular circuit. Thank you, Your Honor. Let me ask you this. It gets back to, I think, my first question, which was whether the EJCDC agreement could stand alone. Is there an argument about any part of that is ambiguous? I don't think... In and of itself. I would answer it this way, Judge. It does not represent the services that the parties agreed to in their contract. So it would be like me saying... It does not include the planning. Well, it doesn't include any of the other basic engineering services necessary to start and manage the project from beginning to end. The base contract doesn't just apply to the beginning. Its terms apply to the entire course of action. For example, change orders to the contract are required under the base agreement. So two years later, when the parties made change orders to add services to the contract between baseline and the owner, they referred back to the original agreement and did change orders to that agreement. And that course of conduct, I believe, is an indication to the court of what the party's intent was under this contract, that they always intended, including USDA, that the agreement consisted of all three parts. And so I don't believe that you can pull one part out without altering the agreement that the parties reached. I don't believe it's severable in that sense. The bottom line is you rely on the July document saying to the extent there's any inconsistencies, that controls. Yes, Your Honor. And with all due respect, we see that in contracts every day because, particularly in construction and design contracts, because parties frequently find provisions and attachments, and there are multiple attachments, and there may be an inconsistency that they didn't find. And what they do is they agree that this particular part of the contract will govern to the extent there's any conflict or inconsistency. I believe that that's a fairly common drafting technique. There was nothing unique about that here. Okay, thank you. Thank you, Your Honor. I appreciate the time of the court. Okay, Mr. Parson, you have some time. Thank you, Judge. I'd like to begin with, Judge Riley, your question as to is the EJCDC agreement complete in itself? And the answer is absolutely yes. To suggest, as my colleague did, that it's not, that it doesn't include some of the services provided is simply not supported by the record. If you look at the EJCDC agreement on page 203, for example, of the joint appendix, there is an overview of the services that are reflected in that agreement, and it includes specifically, it says, the owner intends to contract Baseline Engineering Corporation for the services set forth in the agreement and exhibits which follow. The project includes the permitting, design, and construction phase services for a water treatment system to remove arsenic and uranium from the groundwater. Engineering services include permitting, design, construction, documents, bid administration, construction phase services, and post-construction services. Baseline will assist with the requirements from the funding agencies. If that's not all-encompassing, I don't know what is. The baseline agreement from July of 2009 contains nothing like that. It does not explain what services are going to be provided in that agreement. The EJCDC agreement that was submitted to the USDA by Baseline Engineering to the USDA for concurrence includes all of the scope of services that Baseline was to provide. Well, the base agreement under 2B says the services to be performed by an engineer under this agreement are identified in Exhibit B. Doesn't that wrap in everything that you just described into the base agreement? It doesn't, Your Honor, because there is, at a minimum, an ambiguity as to what Exhibit B means. Let me be clear. There is nothing in the record marked Exhibit B. Baseline says the EJCDC agreement that we have here that was ultimately concurred with by the USDA is Exhibit B, but it's not marked as Exhibit B. It's interesting because if the court looks at Exhibit A that Baseline says was marked as Exhibit A, that's on page 52 of the joint appendix, it's marked Exhibit A in big, black, bold letters. There is nothing marked Exhibit B on the EJCDC agreement. So it reminds me of the... Does it make a difference that the so-called Exhibit B, but we're talking about the EJCDC, it kind of did not exist at the time of July 2009? I mean, because it hadn't been... There was nothing to attach at that point. It wasn't until August or October. Does that make a difference? It makes a big difference. It reminds me of the circumstances in the U.S. use of lighting case, interface construction case referenced in our briefs, 8th Circuit decision that involved similar circumstances where there was a primary contract and then there was a subcontract that was referenced. And the court said there was an ambiguity as to what this subcontract was. Was it this subcontract or was it another contract that the parties had contemplated drafting? And the same problem lies here. Let me back up. The court there also made clear... I see I'm out of time. May I continue? Go ahead and finish your answer. The court there made clear that a document cannot be incorporated by reference, this is in the cooperative refinery case, if it's not yet in existence. Well, two things. One is on the cover of what you're calling the base agreement, under job description it says, for accompanying EJCDC agreement. And that's number one. And then number two, the EJCDC agreement is dated July 20th, which is the date that the city signed the base agreement. Why do you say it wasn't in existence? And why do you say it had to have been signed? Your Honor, the USDA didn't concur in the EJCDC agreement until two months later, October 5th, 2009. In doing so, in fact, there's email correspondence from the USDA to Baseline. In doing so, the USDA made modifications to the EJCDC agreement between the parties. Those modifications are reflected in what Baseline says is now Exhibit B, a document that apparently existed at the time the city signed it in July of 2009. That's physically impossible. There is no way that those modifications existed when the city signed the Baseline agreement on July 20th, 2009. So it's a standard form, but there were changes made afterwards? Yes. Yes, Your Honor. If the court looks at the joint appendix, page 248, it's correspondence from the USDA to Baseline in which it says, it appears the parties used the appropriate agreement and the agency concurs subject to the following modifications. And there were a couple of modifications made, for example, to the limitations of liability. And there was another modification made. They were handwritten and initialed. If you look at the Exhibit B, the document that Baseline calls Exhibit B, it contains those handwritten modifications. Those weren't made until October of 2009. So that document didn't exist. It couldn't have existed in July of 2009. And, again, the cooperative refinery case kicks in, which says you can't incorporate a document by reference unless it exists. And it goes to, if I may, to the basic contract principle of assent. There must be a meeting of the minds in order to have an enforceable agreement. Both parties have to understand what the material terms are. And at that time— I think we understand. Okay. Okay. With that, Judge, if there aren't any other questions, I thank the court for its time. Okay, thank you both. Thank you. Well argued, well presented. We'll take it under advisement and get back to you as soon as we can. Thank you.